998 F.2d 1011
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steve Broderick MULLINGS, Defendant-Appellant.
 No. 92-5523.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 7, 1993.
Decided: July 22, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Newport News.
 Joseph Barry McCracken, COOK & MCCRACKEN, for Appellant.
 Arenda L. Wright Allen, Assistant United States Attorney, for Appellee.
 Richard Cullen, United States Attorney, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before LUTTIG, Circuit Judge, SPROUSE, Senior Circuit Judge, and KISER, Chief United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Steve Broderick Mullings appeals the lower court's refusal to grant him a two point reduction for acceptance of responsibility under the Sentencing Guidelines in connection with his guilty plea to one count of giving false statements to a licensed gun dealer. Finding no clear error with the court's ruling on this matter, we affirm.
 
 I.
 
 2
 On February 7, 1992, the defendant was stopped by a Delaware trooper near Harrington, Delaware. After receiving permission from the defendant to search the car, the trooper found two obliterated firearms and several Western Union receipts bearing the names of the defendant and Michael Perren, the defendant's boss at a Newport News, Virginia retail store. That same day, the defendant was interviewed by agents for the Bureau of Alcohol, Tobacco and Firearms ("ATF"). While he initially misled them as to the identity of the intended recipient, he later identified the individual (a New York resident) and explained how Perren and the defendant had obtained and obliterated the firearms. Based on the information provided by the defendant, the ATF shortly thereafter interviewed Perren, who corroborated the defendant's testimony regarding the February incident. Perren also disclosed both his and the defendant's participation in a similar firearm purchase in January 1992, which he claimed had been initiated by the defendant. The defendant, who was not charged with the January incident, pleaded guilty to one count of causing false statements to be made involving the purchase of a firearm, in violation of 18 U.S.C. sections 2, and 924(a)(1)(A).
 
 
 3
 In preparing her Presentence Report (PSR), the probation officer questioned the defendant about the February incident and concluded that the defendant minimized his role by claiming that he was merely Perren's gopher. While the probation officer observed remorse, she noted in her PSR " ... what he has demonstrated is not affirmative acceptance of personal responsibility for his criminal conduct but rather regret at his arrest and recognition of the possible outcome." J.A. at 103. The PSR did not recommend a two point reduction for acceptance of responsibility.
 
 
 4
 At the July 13, 1992 sentencing hearing, the probation officer reiterated her belief that the defendant had not accepted responsibility for his actions. She further stated that because of his continued assertion that Perren was to blame for the February incident, she did not bother questioning him about the January incident, concluding that he would invoke the same excuse if asked to explain his role. Id. at 19.
 
 
 5
 The ATF agent testified that during his initial interview with the defendant following his February arrest, and during a second interview conducted on the day of the sentencing hearing, the defendant claimed that he would not have become involved in the February purchase had it not been for Perren. While the defendant discussed the January incident during the second interview, he continued to maintain that Perren was to blame for the defendant's involvement in the charged offense. Id. at 29, 39-40.
 
 
 6
 The defendant testified about his involvement in both the January and February incidents. When asked by the court to explain why he had kept blaming Perren for his misfortunes, the defendant stated: "what I'm saying here is if-if that situation never brought up in [sic] the first place, I mean I wouldn't have known of it, and I would not get involved in it, and that's basically what I was trying to say." Id. at 53.
 
 
 7
 The court adopted the PSR's findings and concluded that the defendant failed to make a showing of acceptance of responsibility for the February incident. In making this finding, the court cited the defendant's continued assertions to his probation officer, to the ATF agent and to the court that he was a minor participant in the criminal activity who had been led astray by Perren. In addition, the court noted that while the PSR did not address the January incident, the court would consider this conduct as further evidence of his continued claim that Perren was to blame for the defendant's actions. Id. at 7983.
 
 II.
 
 8
 Section 3E1.1(a) of the Sentencing Guidelines allows a two-level reduction if the defendant clearly demonstrates remorse and an affirmative acceptance of personal responsibility for his criminal conduct. The burden of showing an acceptance of responsibility rests with the defendant who must make such a showing based on a preponderance of the evidence. United States v. Urrego-Linares, 879 F.2d 1234, 1239 (4th Cir.), cert. denied, 493 U.S. 943 (1989). Determining whether the defendant has clearly shown recognition and affirmative acceptance of personal responsibility is a factual issue for the court. A court's refusal to reduce the offense level will not be disturbed unless clearly erroneous. United States v. Curtis, 934 F.2d 553, 557 (4th Cir. 1991).
 
 
 9
 The commentary section following Section 3E1.1(a) lists a number of factors to consider when deciding whether a defendant qualifies for an acceptance of responsibility reduction. See Commentary, Application Note 1. Such factors include the voluntary withdrawal from the criminal conduct as well as voluntary and truthful admission of the offense and related conduct. Id. The court considered these factors and noted that the defendant had not voluntarily withdrawn from the activity but had instead been "caught at it." J.A. at 80. The court further noted that while the defendant eventually admitted his involvement in both the January and February conduct, the defendant's continued finger pointing at Perren failed to amount to a personal acceptance of responsibility.
 
 
 10
 We see no clear error by the lower court in refusing to grant a reduction to the defendant for acceptance of responsibility. We therefore affirm the sentence given to Mullings.
 
 AFFIRMED